# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TOMMY ROGERS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-4259** |
| **COASTAL TOWING, L.L.C.** | **SECTION "K"(4)** |

## ORDER AND OPINION

Before the Court is the "Motion for Summary Judgment" filed on behalf of defendant Coastal Towing, L.L.C. Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, DENIES the motion.

## BACKGROUND

At approximately midnight on December 31, 2007, Captain Joseph Dardar of the M/V KAY ANN—a vessel owned by defendant Coastal Towing, L.L.C. ("Coastal")—suffered a heart attack. The Lafourche Parish Ambulance Service District No. 1 was summoned to respond to that medical emergency. Plaintiff Tommy Rogers ("Rogers") was one of two paramedics assigned to respond. At Rogers's request a crew member aboard the vessel provided a gangplank from the dock to the vessel to facilitate boarding. The deck of the vessel was approximately three to four feet below the end of the gangplank, requiring Rogers to jump from the gangplank onto the deck. In doing so, he allegedly sustained various injuries. As a result of his injures, Rogers claims that he has experienced pain and suffering, disability, loss of income, loss of enjoyment of life, and medical expenses. In July 2009, Rogers filed a complaint seeking damages for his injuries. Subsequently, Coastal filed for summary judgment, urging that (i)

Louisiana's Professional Rescuer's Doctrine, which bars professional rescuers from recovering for injuries sustained in the course of their work, extends to emergency medical personnel and (ii) the Louisiana Professional Rescuer's Doctrine may be applied to supplement the general maritime law.

## LAW AND ANALYSIS

### I. Subject Matter Jurisdiction

The complaint states that this Court has jurisdiction "based upon the Admiralty Law of the United States of America and the General Maritime Law."[1] Coastal has not disputed the exercise of admiralty jurisdiction by this Court. However, that Coastal has not contested such jurisdiction is not dispositive of the issue. A federal court must determine for itself whether subject matter jurisdiction exists over the case before it.[2] Having examined the pleadings, the Court has determined that both a maritime locus[3] and nexus[4] exist as to Roger's claim, and as

---

[1] Doc. 1.

[2] "United States District Courts and Courts of Appeals have the responsibility to consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties and to dismiss any action if such jurisdiction is lacking." *Giannakos v. M/V BRAVO TRADER*, 762 F.2d 1295, 1297 (5th Cir. 1985)

[3] A maritime locus is present wherever the incidents giving rise to the claim occurred on "navigable waters." *The Daniel Ball*, 77 U. S. 557, 563 (1870). Navigable waters are those waters which (i) are navigable in fact, (ii) run between two states or empty into the sea, and (iii) are capable of supporting maritime commerce. *Id.* Here, the Complaint alleges that the incidents giving rise to the litigation took place aboard a vessel harbored in Port Fourchon, Lafourche Parish, Louisiana. Although not alleged in the pleadings, the Court takes judicial notice that Port Fourchon communicates with the Gulf of Mexico through various bodies of water. As such, it satisfies the maritime locus requirement.

[4] A maritime nexus is present wherever the incidents giving rise to the claim, assessed at an intermediate level of generality, (i) are substantially related to a traditional maritime activity and (ii) have a potentially disruptive effect on maritime commerce. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 538-40 (1995). Defined at an intermediate level of generality, the incidents giving rise to this claim may be described as injury sustained by a paramedic in the course of rendering emergency medical assistance aboard a vessel. In light of the duty of maintenance and cure owed to seaman by vessel owners, the provision of medical care to seamen can properly be characterized as "related to a traditional maritime activity" not least because maritime commerce cannot be carried on without healthy seamen. *A fortiori*, any impediment to the administration of proper medical care to seamen created by negligence aboard a vessel would have "a potentially disruptive effect on maritime commerce."

such, the exercise of admiralty jurisdiction is appropriate in this case.

## II. Law Applicable

"With admiralty jurisdiction comes the application of substantive admiralty law." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864, 106 S.Ct. 2295, 2298–99, 1986 AMC 2027 (1986). The question presented by Coastal's motion is whether the general maritime law preempts Louisiana's Professional Rescuer's Doctrine.

### A. Federal Preemption of State Law

Under the Preemption Clause of the Constitution, federal law preempts conflicting State law. U.S. CONST., art. VI, cl. 2. The judge-made general maritime law is a facet of federal law and therefore preempts conflicting State law. THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 4-3 (4th ed. 2004) (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 1955 A.M.C. 467 (1955). However, the Supreme Court has approved the application of State law where it serves to supplement, but not contravene, the general maritime law by filling a "gap" therein. *See e.g., Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 116 S.Ct. 619, 1996 A.M.C. 305 (1996). There are limits to such supplementation: A State law may not supplement the general maritime law where the State law (i) conflicts with an applicable act of Congress, (ii) works material prejudice to a characteristic feature of the general maritime law, or (iii) interferes with the proper harmony and uniformity of the general maritime law in its international and interstate relations. *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 216, 37 S.Ct. 524, 529, 1996 A.M.C. 2076 (1917). To determine whether one of the foregoing limitations is applicable in this case, it is necessary to examine the relevant aspects of the general maritime law and the Professional Rescuer's Doctrine.

## B. The General Maritime Law

The general maritime law imposes upon vessel owners "the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Kermerac v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632, 79 S.Ct. 406, 410, 1959 A.M.C. 597 (1959). Where the breach of that duty is urged by a plaintiff, it will not lie for the defendant to counter that the plaintiff assumed the risk of his injuries, for, in admiralty, assumption of risk is not a defense. *National Marine Serv. Inc. v. Petroleum Serv. Corp.*, 736 F.2d 272, 1987 AMC 840 (5th Cir.1984). *See also Socony-Vacuum Oil Co. v. Smith*, 305 U.S. 424, 59 S.Ct. 262, 1939 A.M.C. 1 (1939); *Edward Leasing Corp. v. Uhlig & Associates, Inc.*, 785 F.2d 877, 1987 AMC 2268 (11th Cir. 1986); *Doucet v. Diamond M Drilling Co.*, 683 F.2d 886, 1983 AMC 2999 (5th Cir. 1982). Rather, if what the common law would characterize as "assumption of risk" amounts to fault or negligence on the part of the plaintiff, the comparative fault rule, as incorporated into the general maritime law by the Supreme Court in *United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 1975 A.M.C. 541 (1975), applies.[5] Parties to a claim in admiralty are liable to pay damages in proportion to the amount of their respective fault; thus, fault on the part of a maritime plaintiff will not bar his recovery unless he is entirely at fault. *Id.* at 411, 95 S.Ct. at 1715-16.

## C. The Professional Rescuer's Doctrine

Under Louisiana law, "[t]he Professional Rescuer's Doctrine is a jurisprudential rule that essentially states that a professional rescuer, such as a fireman or a policeman, who is injured in

---

[5] In *Reliable Transfer* the Supreme Court eschewed the general maritime law's prior contributory negligence regime in favor of a comparative fault regime.

4

the performance of his duties, 'assumes the risk' of such an injury and is not entitled to damages." *Gann v. Matthews*, 03-640, pp. 5-6 (La. App. 1 Cir. 2/23/04); 873 So.2d 701, 705. However, Louisiana courts have recognized that professional rescuers do not assume the risk of all injury without recourse.[6]

For the adoption of the Professional Rescuer's Doctrine, Louisiana courts have advanced a dual justification. First, the doctrine is justified by the assumption of risk on the part of professional rescuers. See *Meunier v. Pizzo*, 97-0047 (La.App. 4 Cir. 6/18/97); 696 So.2d 610, 613. That is, those persons engaged in the profession of rescuing others (e.g., firemen and police officers) knowingly assume the risks of their profession, and such professional rescuers are compensated in a manner commensurate with the risks they knowingly undertake. Second, the doctrine is justified by a public policy of encouraging those in need of rescue to call for it, rather than to abstain from doing so out of fear of liability for injuries sustained by a professional rescuer. *Id.* at 614-15. Notwithstanding such justifications, while Louisiana and numerous other

---

[6]As one Louisiana Court noted:

> A professional rescuer may recover for an injury caused by a risk which is independent of the emergency or problem he has assumed the duty to remedy. A risk is independent of the task, and the assumption of the risk rationale does not bar recovery, if the risk-generating object could pose the risk to the rescuer in the absence of the emergency or specific problem undertaken.
>
> On the other hand, "dependant" risks arise from the very emergency that the professional rescuer was hired to remedy. The assumption rationale bars recovery from most dependant risks except when (1) the dependant risks encountered by the professional rescuer are so extraordinary that it cannot be said that the parties intended the rescuers to assume them or (2) the conduct of the defendant may be so blameworthy that tort recovery should be imposed for the purposes of punishment or deterrence. Under the second exception to the professional rescuer's doctrine, . . . in order to allow a professional rescuer recovery, the defendant's actions or lack of actions have to rise to the level of "recklessness or wanton negligence."

*Holloway v. Midland Risk Ins. Co.*, 33-026, pp. 4-5 (La. App. 2 Cir. 5/15/00), 759 So.2d 309, 313-14. Neither of the parties have suggested that, even if the Louisiana Rescuer's Doctrine were to apply, such exceptions would be relevant.

jurisdictions have espoused, in one form or another, a Professional Rescuer's Doctrine, there are a number of other jurisdictions which do not espouse such a doctrine.[7] Instead, those jurisdictions apply a comparative fault analysis, taking into account the risks inherent in performing a particular rescue.

### 1. Application of the Professional Rescuer's Doctrine to Paramedics

Despite Coastal's representations that the State of Louisiana has extended the Professional Rescuer's Doctrine to emergency medical personnel, neither the Louisiana Legislature nor a Louisiana State court have ever expressly done so. In support of its contention that the doctrine extends to emergency medical personnel, Coastal cites *Thomas v. City of Bastrop*, No. 08-1066, 2010 WL 1230160 (W.D. La. March 29, 2010). In *Thomas*, the plaintiff, a paramedic, was summoned to the scene of a gunfight between a suspect and the police. While attempting to treat one of the officers who had been shot, the plaintiff was himself shot in the shoulder. Noting that "Louisiana courts have yet to consider the issue of the rule's applicability to emergency medical personnel specifically," the court held that the Louisiana Professional Rescuer's Doctrine does apply to emergency medical personnel and accordingly denied recovery to the plaintiff. *Thomas*, 2010 WL 1230160, at *12.

### 2. Application of the Professional Rescuer's Doctrine to Cases in Admiralty

---

[7] Massachusetts, Minnesota, Florida, Pennsylvania, Oregon, Colorado, and New Jersey, having initially adopted the doctrine, have since rejected it. *See Farmer v. B & G Food Enterprises, Inc.*, 2000-CA-00722-SCT (¶ 4); 818 So.2d 1154, 1156 (Miss. S. Ct. 2002).

To the extent that the Louisiana Rescuer's Doctrine applies to emergency medical personnel, it must be determined whether the general maritime law preempts such a doctrine. To date, no court has expressly addressed this issue. Nevertheless, Coastal contends that *Carter v. Taylor Diving and Salvage Co.*, 341 F. Supp. 628 (E.D. La. 1972) is authority for the application of the Louisiana Professional Rescuer's Doctrine to a case in admiralty. The Court, for a number of reasons, is unpersuaded.

In *Carter*, there is no discussion of jurisdiction and no mention is made of the general maritime law. Additionally, only one case cited in the opinion, *Theodories v. Hercules Navigation Co., Inc.*, 448 F.2d 70 (5th Cir. 1971), was a case in admiralty, and that case was cited only in *dictum*.[8] Moreover, in the thirty-eight years since *Carter* was decided, it has been cited only five times and never for the proposition that a professional rescuer's doctrine may be applied to a claim in admiralty.

**D. Preemption Analysis Applied to Louisiana's Professional Rescuer's Doctrine**

Because the Court determines that no federal court has applied the Professional Rescuer's Doctrine to a claim in admiralty, it is necessary for this Court to determine whether it is appropriate to do so. As discussed, *supra*, State law may not supplement the general maritime law where State law (i) conflicts with an applicable act of Congress, (ii) works a material prejudice to a characteristic feature of the general maritime law, or (iii) interferes with the proper harmony and uniformity of the general maritime law in its international or interstate relations. *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 216, 37 S.Ct. 524, 529, 1996 A.M.C. 2076 (1917).

---

[8]Notably, the claim at issue in *Theodories* was for unseaworthiness—a cause of action conceptually distinct from the claims in both *Carter* and the case at bar.

Because there is no act of Congress addressing whether professional rescuers may recover for injuries sustained while performing their duties aboard a vessel, only the last two limits on the applicability of State law need be considered.

The Louisiana Professional Rescuer's Doctrine works a material prejudice to a characteristic feature of the general maritime law–salvage of life. Whereas the focus of the policy underlying Louisiana's Professional Rescuer's Doctrine is, in part, on encouraging those in need of rescue to call for it, the focus of the historic policy of life salvage is on encouraging those in a position to rescue others in peril to do so. As Judge Brown expressed it in *Grigsby v. Coastal Marine Service of Texas, Inc.*, 412 F.2d 1011, 1021-22, 1969 A.M.C. 1513:

> [A] broader approach comes from the basic notion . . . [that] an admiralty case is controlled by substantive principles of maritime law.
>
> Of course that statement itself puts an end to any problem. For of all branches of jurisprudence, the admiralty must be the one most hospitable to the impulses of man and law to save life and limb and property. The law of salvage, a distinctively maritime branch of the law, is the historical forerunner of latter day doctrines which supposedly reflect the more enlightened and humane outlook of contemporary society. Maritime law in every way and in every context encourages the salvor to salve–to save. . . .
>
> In matching law to man's needs, moral and physical, the admiralty would be the first to accord great liberality to this doctrine. Indeed, as the admiralty looks at it, the greater the risk, the greater the seafaring man's obligation to respond, and the greater the risk, the greater is the reward where awards can be made.

The focus of this policy–the marine rescuer–was statutorily affirmed by Congress in the Life

Salvage Act, which imposes upon seamen an affirmative duty to render assistance to "any individual found at sea in danger of being lost" 46 U.S.C. § 2304. To allow the Louisiana Professional Rescuer's Doctrine to supplement the general maritime law would be to shift the focus of the general maritime law, long trained upon the rescuer, to the person calling for rescue, and so work a material prejudice to a characteristic feature of the general maritime law. The Court declines to do so.

Additionally, and more damningly, Louisiana's Professional Rescuer's Doctrine interferes with the proper harmony and uniformity of the general maritime law, and as such it is preempted by the general maritime law. A number of jurisdictions–some containing or bordering navigable waters of the United States–have affirmatively rejected such a doctrine; and even among those jurisdictions espousing such a doctrine, it is uniform in neither application nor analysis.[9] Accordingly, while within Louisiana courts, application of a Professional Rescuer's Doctrine would likely produce a uniform result, the application of the non-uniform doctrines espoused by the several States would necessarily produce a non-uniform national result, creating discord within the general maritime law. It is precisely this result which *Jensen* sought to avoid.

**CONCLUSION**

Because the application of Louisiana's Professional Rescuer's Doctrine would work a material prejudice to a characteristic feature of the general maritime law and would interfere with the proper harmony and uniformity of the general maritime law in its interstate relations, it is preempted by the general maritime law. Accordingly,

---

[9]For example, while Georgia's Professional Rescuer's Doctrine appears to apply to emergency medical personnel, Michigan has affirmatively declined such an application. *Compare Kapherr v. MFG Chemical, Inc.*, 277 Ga.App. 112, 625 S.E.2d 513, *with Kowalski v. Gratopp*, 177 Mich. App. 448, 442 N.W.2d 682.

**IT IS ORDERED** that the motion is **DENIED**;

New Orleans, Louisiana, this 3rd day of June, 2010.

                              STANWOOD R. DUVAL, JR.
                           UNITED STATES DISTRICT JUDGE